STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. FARMERS STATE BANK OF WOLBACH: I. A. KIRK, RECEIVER, APPELLEE: JAMES T. BIGELOW, CLAIMANT, APPELLANT.

FILED JULY 10, 1928.   No. 26102.

*T. T. Bell* and *Prince & Prince,* for appellant.

*C. M. Skiles* and *Lanigan & Lanigan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON and HOWELL, JJ., and BEGLEY and REDICK, District Judges.

DEAN, J.

Some time in February, 1925, the Farmers State Bank of Wolbach, hereinafter called the bank, closed its doors and soon thereafter came into the hands of I. A. Kirk, as receiver. In the present action James T. Bigelow, the claimant, seeks to recover from the receiver approximately $33,484, which he contends was placed by him in the bank, from time to time, as money deposited, and that it therefore comes within the meaning and the protection of the depositors' guaranty law. The claimant also seeks to recover lawful interest thereon until paid. In his petition he pleaded 15 separate causes of action. Two of these were allowed by the district court as valid claims against the depositors' guaranty fund. One of these is in the sum of $600 and the other is in the sum of $573, both claims so allowed aggregating $1,173. The receiver joins in a statement with counsel for the guaranty fund wherein it is agreed that the two claims so allowed by the court are "not contested." It follows that the claims so allowed will not be further noticed here. All of the remaining 13 certificates of deposit, whereon the claimant seeks to recover approximately $32,311, were disallowed as claims against the depositors' guaranty fund, but were allowed as general claims against the bank. From the above noted disallowance of payment of a very large part of his claim from the bank guaranty fund the claimant has appealed.

Aside from the two claims which were allowed, as noted above, the main question now before us is this: Did the remainder of the money which was placed in the bank in question here by the claimant constitute a loan of money to the bank, or did it constitute a deposit within the meaning of the bank guaranty law? The record is replete with evidence which was submitted, both by the claimant and by his nephew, M. T. Kernodle, the latter being cashier of the bank when it closed its doors, all of which goes to show that the so-called deposit does not come within the protection of the depositors' guaranty fund. The record contains more than 100 letters which passed between the

claimant and the cashier in respect of the conduct of the bank's business, and these letters likewise support the proposition that the moneys placed in the bank from time to time by the claimant, or at his direction, were not deposits, but were loans made by claimant to the bank to tide it over the straitened circumstances into which it had fallen. The letters, and other of the evidence, all go to show that the claimant was deeply interested in the bank in a financial way and that he was the owner of a large block of bank stock, namely, upwards of 80 shares.

Following are excerpts from some of the letters that passed between claimant and the cashier of the bank and which claimant wrote:

"Dear Tommy: I have your letter and note what you say and must confess that it is another surprise, as I took it from your last letter that you could get a little more money from Omaha and did not think you would need more. I had presumed that with the hogs and cattle you told me were there for sale, it would pull you through. I hardly see how I can come down there, as I have not the money to spend, and can see no good in it, as I have about gone my limit as I told you when you were here. I have sold all my bonds having sent in the last yesterday at $87 per hundred in order to meet some interest that I have to pay July 1, and as I have borrowed heretofore all I cared to, I am at the limit. I may be able to squeeze out a couple of thousand more, but if you have to close up and burst me up in business also, why we might as well stop now."

"Dear Tommy: I received your letter and also note what you said in your conversation. I am sending under separate cover a letter to the bank with draft and you can leave the letter where your assistant can see it. Of course some of it is hot air. Money is tight here and I am hard up. Had to borrow 20M yesterday. Therefore get along with as little as you can, but if you need help let me know."

Under date of August 21, 1921, a letter was written by

the cashier to claimant Bigelow, wherein among other things this is said:

"Dear Uncle: I received your letter and glad to hear from you, and would have been glad if (you) had come down had it been so you could. * * * This has been the hardest year that I ever put in trying to do something and could not make but very little progress or rather the progress that I wanted to. * * * I know I am going to have to have a little money but don't think it will have to be very much for I just will not loan any. I wish we would not have to have more for I regret it just as much as any one ·can but still I cannot help it. I have tried to make every effort count since a year ago but conditions have been so different from anything I ever saw that it was impossible to do what you wanted to do. Our reserve is off about $3,000 to $4,000 the last month which puts us below the requirements so I want to ask you to help us."

Under date of April 14, 1915, the cashier wrote to claimant and, among other things, this appears:

"Dear Uncle: We are going to have a meeting today and get matters settled some way. It looks now as if there is only one way. Smith went after Thompson for talking to you when you were here without having him present. So under such conditions it is very important that we get rid of such unsettled conditions. It is possible that I might want $5,000 the same as the amount you have already helped me with. I will not want it unless it is absolutely necessary. Our reserve has gone down quite a little in past few days and if Smith goes out it is natural that he will hurt all he can and take all that he has in here, which is about $7,000."

Other letters of like import passed between claimant and the cashier, all of which, in addition to the oral evidence, go to show that the claimant was vitally interested in the management of the bank from an early date until it closed its doors.

Section 24, ch. 30, Laws 1925, among other things, provides:

"No claim to priority shall be allowed which is based upon any evidence of indebtedness in the hands of or originally issued to any stockholder, officer, or employee of such bank, which represents money obtained by such stockholder, officer, or employee, from himself or some other person, firm, corporation or bank in lieu of or for the purpose of effecting a loan of funds to such failed bank."

The following citations of authority support the conclusion which we have reached in the present case. In *State v. Atlas Bank,* 114 Neb. 646, we held:

"Ordinarily, where a stockholder of a state bank, with knowledge that the bank is insolvent or in an unsafe condition, at the instance and request of the bank officials obtains and places in or to the credit of the bank money, to enable the bank to meet a pressing obligation, and where the money is not placed in or at the command of the bank, for the use, safe-keeping or convenience of the stockholder, in the ordinary and usual course of business, such transaction does not constitute a good-faith deposit, within the meaning of the guaranty fund law, and is not protected by the depositors' guaranty fund."

See, also, *State v. Atlas Bank,* 114 Neb. 650; *Iams v. Farmers State Bank,* 101 Neb. 778.

"In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." *State v. Farmers State Bank,* 111 Neb. 117.

In *First Nat. Bank v. Hirning,* 48 S. Dak. 417, the court held: "One loaning money to bank with full knowledge that bank is unsafe, to enable its officers to increase depleted reserve, or for some other use of bank, and not for safe-keeping or convenience to him as depositor, though form of transaction appears as deposit, is not 'depositor' entitled to participate in guaranty fund."

In view of the facts in the present case and the law applicable thereto we hold that the money placed in the bank by the claimant, except the sum of $1,173, to which reference is made herein, does not constitute a deposit within the meaning of the bank guaranty law, but was merely a loan of money to the bank and is not protected by the bank guaranty law. Comp. St. 1922, sec. 8033.

We conclude that the judgment of the district court is right and must be and hereby is in all things

AFFIRMED.